## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. TWILLADEAN CINK,<br><br>        Plaintiff,<br><br>v.<br><br>1. GRANT COUNTY, OKLAHOMA,<br>    a political subdivision which is<br>    sued in the name of the Board of<br>    County Commissioners for<br>    Grant County, Oklahoma,<br><br>2. SCOTT STERLING, individually,<br><br>        Defendants. | Case No. CIV-13-1069-C<br><br>JURY TRIAL DEMANDED<br><br>ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW THE PLAINTIFF** and hereby pleads her claims as follows:

## PARTIES

1. The Plaintiff is Twilladean Cink, an adult resident of Grant County, Oklahoma.

2. The Defendants are:

   a. Grant County, Oklahoma, a political subdivision which is sued in the name of the Board of County Commissioners for Grant County, Oklahoma ("Grant County"); and

   b. Scott Sterling, individually, as a resident of Grant County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiff's causes of action are for age discrimination in violation of the Age Discrimination in Employment Act (ADEA) and disability discrimination in violation of the Americans with Disabilities Act (ADA). Age and disability discrimination also violate the Oklahoma Anti-Discrimination Act. Jurisdiction over the federal claims is provided under 42 U.S.C. § 12117(a), 29 U.S.C. § 626(c) and 28 U.S.C. § 1331. The state law claims arise out of the same core set of facts and jurisdiction is vested

over those claims by 28 U.S.C. § 1367(c). All of the actions complained of occurred in or near Grant County, Oklahoma and the Defendants may be served in that county.

4. Grant County is within the United States District Court for the Western District of Oklahoma, wherefore venue is proper in this Court under and 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

5. Plaintiff Cink was employed by the Defendant County for more than thirty years.

6. Plaintiff Cink was terminated from the county around June 20, 2013.

7. Around mid-February 2013 the Plaintiff Cink returned from being off work for a medical condition related to Plaintiff's bones and specifically her hips.

8. The medical condition resulted in impairments which, without regard to the ameliorative effects of mitigating measures, substantially limit one or more major life activities, including (but not limited to):

   A. Plaintiff's ability to walk would be substantially limited in that she could not walk more than a few steps at a time;

   B. Plaintiff's ability to stand would be substantially limited in that she could not stand more than a few minutes at a time.

9. As a result of the limitations set out in Para. 8, above, Plaintiff suffers from a disability as defined by the Americans with Disabilities Act in that she suffers from a condition which materially impairs a major life activities as defined by 42 U.S.C. § 12102(1)(A), (2)(B) and/or is regarded as having such impairment as defined by 42 U.S.C. § 12102(1)(C), (3).

10. At the least Defendants perceived Plaintiff as having a disability. Defendant Sterling and undersheriff Tim Wilkerson made nearly daily comments that Plaintiff was too sick and was also at a risk of falling due to her medical condition and that she needed to quit her job. Defendant Sterling told Plaintiff on multiple occasions that if she was not going to retire, then she would be fired.

11. Defendant Sterling and Mr. Wilkerson (Undersheriff) on a near daily basis told Plaintiff Cink that she was too old and too sick to continue doing her job, that she needed to retire, and that they were going to "watch [her]" until she quit her job.

12. Plaintiff Cink complained to Defendant Sterling about the ageist comments and repeatedly asked that such comments cease.

13. Defendants would become angry with Plaintiff Cink that she did not retire and continued to report to work and do her job.

14. Defendant Sterling began to give Plaintiff Cink written reprimands even though she has never before been reprimanded and was only reprimanded now after she had complained of and opposed the harassment set out above.

15. Around June 2013 Defendant Sterling told Plaintiff Cink that if she did not retire she would be transferred to the "midnight shift", which began at 4 p.m. and ended at midnight. At the time, Plaintiff Cink worked the day shift and had worked this shift for more than ten years.

16. Plaintiff Cink requested that she not be required to work the midnight shift (which would be a fundamental change in Plaintiff's job schedule and duties) because she suffered from night blindness, a medical condition resulting in a near inability to see in dark conditions.

17. The night blindness resulted in impairments which, without regard to the ameliorative effects of mitigating measures, substantially limit one or more major life activities or bodily functions, including (but not limited to) Plaintiff's ability to see and bodily functions including brain optic function-type impairments.

18. As a result of the limitations set out in Paras. 16-17, above, Plaintiff suffers from a disability as defined by the Americans with Disabilities Act in that she suffers from a condition which materially impairs a major life activities as defined by 42 U.S.C. § 12102(1)(A), (2)(B) and/or is regarded as having such impairment as defined by 42

U.S.C. § 12102(1)(C), (3).

19. As a result of Plaintiff's vision related disability she was unable to drive during the night time and was would have been unable to drive herself home from work when her shift was over around midnights.

20. Plaintiff reported her medical condition to Mr. Sterling and requested reasonable accommodations of not being transferred to the midnight shift.

21. Mr. Sterling told the Plaintiff that the only way to avoid being transferred to the midnight shift was to retire. Defendant Sterling showed discriminatory and retaliatory animus in his response by appearing to sneer and become angry and sarcastic.

22. After Defendant Sterling transferred Plaintiff to the midnight shift he replaced the day shift position (that Plaintiff Cink had held for more than a decade) with a female in her mid-thirties.

23. During this period Defendant Sterling told the Plaintiff that he would no longer give Plaintiff Cink raises in pay or the opportunity to receive raises in her pay.

24. Beginning around February 2013 and most recently around June, 2013, Plaintiff Cink reported to Defendant Sterling that he and the Defendant County were in violation of Oklahoma law by failing to maintain at least two jailers on staff at any point in time.

25. Plaintiff Cink was terminated around June 20, 2013.

26. As a direct result of Defendants' harassing and retaliatory conduct, the Plaintiff has suffered, and continues to suffer, lost wages (including back, present and front pay along with the value of benefits associated with such wages) and emotional distress/dignitary harm symptoms including stress, anxiety, frustration, and similar unpleasant emotions.

27. Motivating and/or significant factors in the decision to terminate Plaintiff Cink include her age and/or complaints and opposition to age discrimination, her disability and/or opposition to disability discrimination and requests for reasonable

accommodation, and her complaints of Defendants under-staffing the jail in violation of Oklahoma law. At the least these factors were part of a mixture of motives such that Plaintiff is protected under the mixed motive doctrine. Plaintiff's compliant of jail under-staffing was a significant factor in the termination.[1]

28. Plaintiff Cink has exhausted her administrative remedies to the discrimination (but not retaliation) claims brought pursuant to the ADEA and the ADA. Plaintiff Cink timely filing an EEOC charge of discrimination on July 15, 2013. The EEOC issued Plaintiff Cink a Right to Sue Letter on July 16, 2013 and Plaintiff received such letter thereafter. This complaint is timely filed within ninety (90) days of Plaintiff receiving her right to sue letter.[2]

### COUNT I - CLAIMS AGAINST THE COUNTY

Plaintiff incorporates the allegations above and further alleges:

29. Count I goes only to the Defendant Grant County.

30. Termination on the basis of age is contrary to the ADEA, and the OADA.

31. Under the ADEA Plaintiff Cink is entitled to compensation for lost earnings, past, present and future and for the value of the benefits associated with such earnings.

32. Because the actions of the Defendant County was willful as defined by the ADEA,

---

[1] Plaintiff timely filed a tort claim notice on September 25, 2013, pursuant to the Oklahoma Tort Claims Act. Plaintiff has not yet fulfilled the requirements of the Oklahoma Government Tort Claims Act and therefore does not at this time bring a public policy claim for retaliation after her complaints of illegal under-staffing of the jail. Upon fulfilling the requirements of the OGTCA, Plaintiff intends to amend the complaint to include this claim.

[2] Plaintiff Cink timely filed a charge of discrimination for the retaliation claims on August 22, 2013. The EEOC has not yet investigated such claims for one hundred eighty days nor has the EEOC issued a right to sue letter. Plaintiff Cink intends to amend her complaint to include such claims after exhausting her administrative remedies.

      Plaintiff Cink is entitled to liquidated damages in an amount equal to her wage and benefit loss through the time of trial under the ADEA claim.

33. Plaintiff Cink is also entitled to an award of attorney fees and costs.

34. Plaintiff asserts that the OADA damage caps are unconstitutional under Oklahoma's prohibitions against special laws, and that Plaintiff is entitled to the full range of normal tort damages.

### COUNT II - CLAIMS AGAINST THE COUNTY

Plaintiff incorporates the allegations above and further alleges:

35. Count II goes only to the Defendant Grant County.

36. Discrimination on the basis of a disability or perceived disability, and retaliation for Plaintiffs' requests for accommodation is contrary to the ADA, and the OADA.

37. Under this Count Plaintiff is entitled to compensation for her lost earnings, past, present and future (and for the value of the benefits associated with such earnings), dignitary harm damages, and attorney fees and costs.

38. Plaintiff asserts that the OADA damage caps are unconstitutional under Oklahoma's prohibitions against special laws, and that Plaintiff is entitled to the full range of normal tort damages.

### COUNT III - CLAIMS AGAINST DEFENDANT STERLING

For this cause of action Plaintiff incorporates all prior allegations and further asserts as follows:

39. This cause of action goes only to Defendant Sterling in his individual capacity.

40. Defendant Sterling is liable for the termination of the Plaintiff because he tortious interfered with the Plaintiff's employment with the County in that he acted to attempt to force the Plaintiff to resign and, when Plaintiff would not resign, he terminated her employment.

41. Such action was in bad faith and not for legitimate business purposes in that such action was motivated by the bias and hostility Sterling had for older and disabled

employees.

42. As the direct result of such actions, Plaintiff suffered the injuries above described which include lost wages (past, present and future including the value of benefits associated with such wages) and compensation for dignitary harm damages including but not limited to worry, anxiety, embarrassment and other similar unpleasant emotions.

43. Because the actions of Defendant Sterling were willful, intentional, malicious and/or, at the least, in reckless violation of Plaintiff's rights, Plaintiff is entitled to an award of punitive damages against Sterling in his individual capacity.

**WHEREFORE**, Plaintiff prays that she be granted judgment in her favor and against the Defendants on all of her claims and that this Court grant all available compensatory damages, punitive damages, costs, attorney's fees and any other legal or equitable relief allowed by law.

**RESPECTFULLY SUBMITTED THIS 7th DAY OF OCTOBER, 2013.**

s/ Amber L. Hurst
Mark Hammons OBA No. 3784
Amber L. Hurst, OBA No. 21231
HAMMONS, GOWENS, HURST & ASSOCIATES
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: Amberh@hammonslaw.com
*Attorneys for Plaintiff*
*Jury Trial Demanded*
*Attorney Lien Claimed*