IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TWILLADEAN CINK, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>GRANT COUNTY, OKLAHOMA, )<br>a political subdivision which is sued in )<br>the name of the Board of County )<br>Commissioners for Grant County, )<br>Oklahoma, and SCOTT STERLING, )<br>individually, )<br>)<br>Defendants. ) | Case No. CIV-13-1069-C |

## **MEMORANDUM OPINION & ORDER**

Before the Court are the Defendants' Motions for Summary Judgment (Dkt. Nos. 107 & 109). Plaintiff has responded to both motions. (Dkt. Nos. 126 & 127.) Defendants have replied. (Dkt. Nos. 129 & 137.) The Motions are now at issue.

## I. BACKGROUND

Plaintiff Twilladean Cink was an employee of the Grant County Sheriff's Department from December 1977 to June 2013. In June 2013, Cink was 80 years old. Cink was originally employed as a dispatcher and later became a dispatcher/jailer. Although there is some dispute about whether Cink was employed as a jailer in 2013, all parties agree that Cink was a dispatcher and that the essential functions of her job included relaying instructions and questions to field units, operating communication systems and equipment, using paging systems, and using a two-way radio. On November 30, 2012, Cink broke her hip after a fall at a fitness center and was unable to return to work until February 19, 2013. During that

time, Defendant Scott Sterling took office as the newly elected Sheriff of Grant County. As Sheriff, Sterling took over supervision and control of the jail and was Plaintiff's supervisor. Plaintiff claims that after she returned to work, Sterling would make the comments, "Don't you want to retire because of your age?" or "I'm watching you," at least two or three times a week. Cink asserts that Sterling was trying to bully her into retiring and was looking for an excuse to fire her. In April 2013, Sterling asked Cink to move to the 4:00 p.m. to midnight shift. Plaintiff requested to stay on a day shift because of night vision problems, and Sterling instead moved Plaintiff to three 12-hour shifts with the option of four to eight hours on Sundays. Sterling sent all office employees a memorandum, dated April 30, 2013, which stated that negative behavior at the workplace would no longer be tolerated and would lead to termination. Plaintiff signed this memorandum. (Def.'s Br., Dkt. No. 109, Ex. 8.) On May 3, 2013, Sterling reprimanded Plaintiff for complaining about her new three-day work schedule. In May 2013, several of the jailer/dispatchers had conflicts that made scheduling difficult, and Sterling moved Plaintiff to the 4:00 p.m. to midnight shift. Plaintiff asserts that Sterling changed her shift to try to force her to retire. On May 29, 2013, Plaintiff reported that a man named Keith McLure wanted to speak to Sterling. When Sterling asked for the call back number, Plaintiff—at least twice—mistakenly gave Sterling the number to the Sheriff's office. Plaintiff asserts that Sterling knew McLure had not left a call back number. On May 31, 2013, a semi rollover occurred two miles east of Medford. Plaintiff paged the Medford ambulance to a location two miles west of Medford. Plaintiff asserts that she paged the ambulance to the location provided to her. On June 4, 2013, Sterling met with

Plaintiff to discuss his concerns about her job performance regarding these incidents. On June 16, 2013, Plaintiff received a call from a resident of Grant County who said he shot a man on his property. Plaintiff transferred the call to a deputy in violation of Sterling's policy. Plaintiff asserts that the man threatened to shoot again if not allowed to speak to a deputy. Plaintiff then attempted to page an ambulance to the location of the shooting, but the Medford Fire Department received a page with no instruction as to the type of incident or who was to respond. Plaintiff asserts that a machine malfunction caused the error. When Plaintiff resent the page, she set off the Medford tornado sirens. A severe thunderstorm watch was in effect that night. Plaintiff asserts that co-worker Joe McLemore told her the system was set to page the ambulance. Sterling heard the sirens and called Plaintiff. During the phone conversation, a deputy called dispatch to get a description of the vehicle involved in the shooting. Rather than provide the requested information, Plaintiff told the deputy she was on the phone with the Sheriff. Around June 20, 2013, Sterling terminated Plaintiff's employment.

Plaintiff then filed the present lawsuit on October 7, 2013. Plaintiff's claims against Defendant Grant County of Oklahoma[1] include age discrimination, including creating a hostile working environment and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA") and Oklahoma's Anti-Discrimination Act ("OADA"); disability discrimination, including creating a hostile working environment, failure to accommodate,

---

[1] Defendant has sued Grant County in the name of the Board of County Commissioners for Grant County.

and retaliation, in violation of the Americans with Disabilities Act ("ADA") and the OADA; and wrongful termination in violation of Oklahoma public policy.[2] Plaintiff is suing Defendant Sterling, in his individual capacity, for tortiously interfering with Plaintiff's employment with Grant County.

## II. STANDARD OF REVIEW

Summary judgment is properly granted if the movant shows that no genuine dispute as to any material fact exists and that the movant "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it affects the disposition of the substantive claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). The party seeking summary judgment bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the movant satisfactorily demonstrates an absence of genuine issue of material fact with respect to a dispositive issue for which the non-moving party will bear the burden of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. These specific facts may be shown "by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." Id. Such evidentiary materials include affidavits,

---

[2] Because Plaintiff has withdrawn the wrongful termination claim, the Court will grant summary judgment in Grant County's favor on this claim.

4

deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). When considering a motion for summary judgment, a court must "'view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party.'" Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000) (quoting Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999), *abrogated on other grounds by* Eisenhour v. Weber Cnty., 739 F.3d 496 (10th Cir. 2013)).

### III.  ANALYSIS

A.  Discrimination Claims Under the ADEA. the ADA, and the OADA

The ADEA and the ADA make it unlawful for an employer to discharge an employee on the basis of age or disability. 29 U.S.C. § 623; 42 U.S.C. § 12112. Defendant Grant County argues that it is not Plaintiff's employer and therefore cannot be held liable under ADEA, the ADA, or the OADA. Plaintiff argues that she is an employee of Grant County because the position of Sheriff is an office of the County pursuant to the Okla. Const. art. 17, § 2 and because Grant County pays for Plaintiff's salary, insurance programs, and retirement programs.

The Tenth Circuit addressed a similar argument in Bristol v. Bd. of Cnty. Comm'rs of Cnty. of Clear Creek, 312 F.3d 1213 (10th Cir. 2002). In that Colorado case, a terminated confinement officer sued the Board of County Commissioners of Clear Creek and the County Sheriff, in his official capacity, under the ADA. The Court applied both the joint-employer test and the single-employer test to determine whether the Board and/or the County Sheriff

5

were employers under the ADA. Id. at 1218-20. Both of these tests look at the amount of control the entity exercises over the employee. Id. Under Colorado law, "the County Sheriff is a distinct position, separate from the Board of County Commissioners," and "Sheriffs have exclusive control over the hiring and firing of their employees." Id. at 1219. The Tenth Circuit determined that because the Board had no control over labor relations in the Sheriff's office, it was not an employer under either test. Id. at 1120. Because the absence of an employment relationship between the plaintiff and the Board meant there was "no 'legally sufficient evidentiary basis for a reasonable jury to find'" that the Board was the employer under the ADA, the Court granted judgment in the Board's favor. Id. at 1121 (quoting Fed. R. Civ. P. 50).

This Court also offers analogous precedent. See Lacher v. Bd. of Cnty. Comm'rs for Okla. Cnty. ex rel. Okla. Cnty. Clerk's Office, No. CIV-11-1038-M, 2013 WL 268983 (W.D. Okla. Jan. 24, 2013). In Lacher, a terminated employee of the County Clerk's office sued the Board of County Commissioners for Oklahoma County for discrimination under the ADA, the ADEA, and the OADA. The Court held that "because [the Board] is a constitutionally created body without any supervisory control over plaintiff or the County Clerk's office, [the Board] is not plaintiff's employer and therefore can not [sic] be held liable under ADEA." Id. at *4. The same constitutional provision that creates the Board of County Commissioners and the County Clerk's office creates the Sheriff's office. See Okla. Const. art. 17, § 2.

6

Under Oklahoma law, "a Board of County Commissioners 'is statutorily separate and distinct from the independently elected sheriff.'" Goss v. Bd. of Cnty. Comm'rs of Creek Cnty., No. 13-CV-0374-CVE-TLW, 2014 WL 4983856, at *6 (N.D. Okla. Oct. 6, 2014) (citation omitted). The sheriff is responsible for management of the jail, including the hiring and training of jail personnel. See 19 Okla. Stat. §§ 513, 513.1 & 547(A). A Board of County Commissioners "has no statutory duty to hire, train, supervise, or discipline county sheriffs or deputies." Estate of Crowell v. Bd. of Cnty. Comm'rs of Cnty. of Cleveland, 2010 OK 5, ¶ 23, 237 P.3d 134, 142 (citing Meade v. Grubbs, 841 F.2d 1512, 1528 (10th Cir. 1988), abrogated on other grounds by Ashcroft v. Iqbal, 556 U.S. 662 (2009)). Plaintiff has failed to provide any legal authority showing that Grant County had any control over labor relations of the Sheriff's office. Furthermore, Plaintiff admits that Sterling made the determination to terminate her employment and that no one else was involved in that decision. (Pl.'s Resp., Dkt. No. 126, at 7.) Although the salaries of all county officers are paid "out of the country treasury by order of the board of county commissioners,"[3] budgetary authority over the Sheriff's office is not sufficient to make Grant County an employer. See Bristol, 312 F.3d at 1119-20. Because Grant County has no supervisory control over Plaintiff and has no control over the labor relations of Grant County's Sheriff's office, Grant County is not an employer and cannot be held liable under ADEA and the ADA.

---

[3] 19 Okla. Stat. § 153.

7

The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, including the tortious interference claim against Defendant Sterling. 28 U.S.C. § 1367(c).

Accordingly, the Court hereby GRANTS Defendant Scott Sterling's Motion for Summary Judgment (Dkt. No. 107) and GRANTS the Motion for Summary Judgment of Defendant Board of County Commissioners of Grant County (Dkt. No. 109). The Court shall issue a separate judgment. All remaining pending motions are moot.

IT IS SO ORDERED this 2nd day of February, 2015.

ROBIN J. CAUTHRON
United States District Judge