IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

TWILLADEAN CINK,                          )
                                          )
                    Plaintiff,            )
                                          )
vs.                                       )          Case No. CIV-13-1069-C
                                          )
GRANT COUNTY, OKLAHOMA,                   )
a political subdivision which is sued in  )
the name of the Board of County           )
Commissioners for Grant County,           )
Oklahoma, and SCOTT STERLING,             )
individually,                             )
                                          )
                    Defendants.           )

## MEMORANDUM OPINION & ORDER

Before the Court is the Amended Motion for Summary Judgment of Defendant Board

of County Commissioners of Grant County (Dkt. No. 180). Plaintiff has responded (Dkt. No.

184). Defendant has replied (Dkt. No. 185). The Motion is now at issue.

## I. BACKGROUND

Plaintiff Twilladean Cink was an employee of the Grant County Sheriff's Department

from December 1977 to June 2013. In June 2013, Cink was 80 years old. Cink was

originally employed as a dispatcher and later became a dispatcher/jailer. Although there is

some dispute about whether Cink was employed as a jailer in 2013, all parties agree that Cink

was a dispatcher and that the essential functions of her job included relaying instructions and

questions to field units, operating communication systems and equipment, using paging

systems, and using a two-way radio. On November 30, 2012, Cink broke her hip after a fall

at a fitness center and was unable to return to work until February 19, 2013. During that

time, Defendant Scott Sterling took office as the newly elected Sheriff of Grant County. As Sheriff, Sterling took over supervision and control of the jail and was Plaintiff's supervisor. Plaintiff claims that after she returned to work, Sterling would make the comments, "Don't you want to retire because of your age?" or "I'm watching you," at least two or three times a week. Cink asserts that Sterling was trying to bully her into retiring and was looking for an excuse to fire her. In April 2013, Sterling asked Cink to move to the 4:00 p.m. to midnight shift. Plaintiff requested to stay on a day shift because of night vision problems, and Sterling instead moved Plaintiff to three 12-hour shifts with the option of four to eight hours on Sundays. Sterling sent all office employees a memorandum, dated April 30, 2013, which stated that negative behavior at the workplace would no longer be tolerated and would lead to termination. Plaintiff signed this memorandum. (Def.'s Br., Dkt. No. 109, Ex. 8.). On May 3, 2013, Sterling reprimanded Plaintiff for complaining about her new three-day work schedule. In May 2013, several of the jailer/dispatchers had conflicts that made scheduling difficult, and Sterling moved Plaintiff to the 4:00 p.m. to midnight shift. Plaintiff asserts that Sterling changed her shift to try to force her to retire. On May 29, 2013, Plaintiff reported that a man named Keith McLure wanted to speak to Sterling. When Sterling asked for the call back number, Plaintiff—at least twice—mistakenly gave Sterling the number to the Sheriff's office. Plaintiff asserts that Sterling knew McLure had not left a call back number. On May 31, 2013, a semi rollover occurred two miles east of Medford. Plaintiff paged the Medford ambulance to a location two miles west of Medford. Plaintiff asserts that she paged the ambulance to the location provided to her. On June 4, 2013, Sterling met with

Plaintiff to discuss his concerns about her job performance regarding these incidents. On June 16, 2013, Plaintiff received a call from a resident of Grant County who said he shot a man on his property. Plaintiff transferred the call to a deputy in violation of Sterling's policy. Plaintiff asserts that the man threatened to shoot again if not allowed to speak to a deputy. Plaintiff then attempted to page an ambulance to the location of the shooting, but the Medford Fire Department received a page with no instruction as to the type of incident or who was to respond. Plaintiff asserts that a machine malfunction caused the error. When Plaintiff resent the page, she set off the Medford tornado sirens. A severe thunderstorm watch was in effect that night. Plaintiff asserts that co-worker Joe McLemore told her the system was set to page the ambulance. Sterling heard the sirens and called Plaintiff. During the phone conversation, a deputy called dispatch to get a description of the vehicle involved in the shooting. Rather than provide the requested information, Plaintiff told the deputy she was on the phone with the Sheriff. Around June 20, 2013, Sterling terminated Plaintiff's employment.

Plaintiff then filed the present lawsuit on October 7, 2013. Plaintiff's claims against Defendant Grant County of Oklahoma ("Grant County") include age discrimination, including creating a hostile working environment, and retaliation, in violation of the Age Discrimination in Employment Act ("ADEA") and Oklahoma's Anti-Discrimination Act ("OADA"); disability discrimination, including creating a hostile working environment, failure to accommodate, and retaliation, in violation of the Americans with Disabilities Act

("ADA") and the OADA; and wrongful termination in violation of Oklahoma public policy.[1]

Plaintiff is suing Defendant Sterling, in his individual capacity, for tortiously interfering with

Plaintiff's employment with Grant County.

## II.  STANDARD OF REVIEW

Summary judgment is properly granted if the movant shows that no genuine dispute

as to any material fact exists and that the movant "is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is material if it affects the disposition of the substantive claim.

Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986).  The party seeking summary

judgment bears the initial burden of demonstrating the basis for its motion and of identifying

those portions of "the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations

omitted).  If the movant satisfactorily demonstrates an absence of genuine issue of material

fact with respect to a dispositive issue for which the non-moving party will bear the burden

of proof at trial, the non-movant must then "go beyond the pleadings and . . . designate

'specific facts showing that there is a genuine issue for trial.'"  Id. at 324 (quoting

Fed. R. Civ. P. 56(e)).  These specific facts may be shown "by any of the kinds of evidentiary

materials listed in Rule 56(c), except the mere pleadings themselves."  Id.  Such evidentiary

---

[1]  Because Plaintiff has withdrawn her Burk tort claim of wrongful termination, and ADA failure to accommodate claim, the Court will grant summary judgment in Grant County's favor on both claims.  (Pl.'s Res. Br.,  Dkt. No.184, p. 35).

materials include affidavits, deposition transcripts, or specific exhibits. Thomas v. Wichita Coca-Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). When considering a motion for summary judgment, a court must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### III. ANALYSIS

A. ADEA Claim

The Age Discrimination in Employment Act ("ADEA") makes it "unlawful for an employer ... to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Without direct evidence of discrimination, the Court "evaluate[s] the claim using the McDonnell Douglas burden-shifting approach." Roberts v. Int'l Bus. Machines Corp., 733 F.3d 1306, 1309 (10th Cir. 2013). To establish a prima facie case of an ADEA violation under McDonnell Douglas, a plaintiff must demonstrate she was: (1) over 40 years of age; (2) performing satisfactory work; (3) terminated from employment; and (4) replaced by a person with comparable qualifications, but of younger age. Adamson v. Multi Cmty. Diversified Servs., Inc., 514 F.3d 1136, 1146 (10th Cir. 2008). If Plaintiff meets this burden, Defendant must then provide a legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If Defendant is able to provide such a reason, the burden is shifted back to the

Plaintiff to introduce evidence that the reason given by the Defendant is a mere pretext for discriminatory intent. Id. at 804.

Defendant agrees that Ms. Cink was over the age of forty, was terminated from her job, and a younger employee took over her job duties. Therefore, the only prong left unresolved, when determining whether Cink has established a prima facie case of age discrimination, is whether Cink performed her job duties satisfactorily. Citing the Tenth Circuit Court of Appeals, Plaintiff argues that satisfactory performance can be proven in three ways:

> a plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, **or** by her own testimony that her work was satisfactory, even when disputed by her employer, **or** by evidence that she had held her position for a significant period of time.

Kenworthy v. Conoco, Inc., 979 F.2d 1462, 1470 (10th Cir. 1992) (emphasis added). Cink has shown credible evidence of satisfactory performance in more than one way. First, there is no dispute that Cink had her position for a substantial amount of time, as she was employed by the Sheriff's Office for over thirty-years. Also, by Cink's own testimony, her work was satisfactory. When asked whether Cink thought she did a really good job as a dispatcher, Cink answered in the affirmative. (Pl.'s Br., Dkt. No.126-1, p. 297). Cink's co-workers also attest to her satisfactory work, stating that Cink "did a good job." (Pl.'s Br., Dkt. No.126-4, p. 91; Pl.'s Br., Dkt. No.126-2, p. 49; Pl.'s Br., Dkt. No.126-6, p. 36 ). Defendant argues that Cink was not a perfect employee. However, Plaintiff has satisfied her

6

burden to show she had satisfactory performance.  In sum, Plaintiff has successfully established a prima facie case of an ADEA violation

B.  ADA Claim

For Cink to prevail on her ADA claim she must first establish: "(1) she is a disabled person as defined by the ADA; (2) she is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) her employer discriminated against her because of her disability." MacKenzie v. City & Cty. of Denver, 414 F.3d 1266, 1274 (10th Cir. 2005). Similar to claims brought under the ADEA, when only circumstantial evidence of alleged discrimination is present in an ADA claim, the McDonnell Douglas burden shifting framework governs.  Defendant argues that Cink has failed to show that she is a disabled person and that she was terminated because of that disability.  "The statute defines disability as either (1) a physical or mental impairment that substantially limits one or more of an individual's major life activities U.S.C. § 12102(2)(A); (2) a record of such an impairment, 42 U.S.C. § 12102(2)(B); or (3) being regarded as having such an impairment, 42 U.S.C. § 12102(2)(c)." Id.

Cink has submitted evidence of her disability, osteoporosis, which Defendant refutes. Because osteoporosis affects the muscular system it is considered an impairment under the ADA.  29 C.F.R. Pt. 1630 app. § 1630.2(h).  Further, Cink contends that her physical impairment limits a major life activity: walking.  Both the Tenth Circuit Court of Appeals and the EEOC regulations that govern the ADA identify walking as a major life activity.

7

Steele v. Thiokol Corp., 241 F.3d 1248, 1253 (10th Cir. 2001); 29 CFR § 1630.2(i). However, whether osteoporosis *substantially* limits her major life activity is a question of fact for the jury. Smothers v. Solvay Chemicals, Inc., 740 F.3d 530, 545 (10th Cir. 2014). Cink has submitted enough evidence to create a genuine issue of fact as to whether her osteoporosis substantially limits her ability to walk, satisfying her burden of showing she does have a disability.

Defendant has not contested Cink's qualifications to perform her job, as required by prong two in establishing an ADA prima facie case. Therefore, the only issue left unresolved in determining if Cink has established a prima facie case of discrimination under the ADA is whether Grant County discriminated against Cink because of her disability. There are several ways Cink can establish this third prong, including the showing of actions or remarks made by Defendant and the timing of Cink's termination. Barlow v. C.R. England, Inc., 703 F.3d 497, 505 (10th Cir. 2012). Cink presents evidence of biased remarks, made by Sterling two to three times per week over a four month period, regarding Cink's disability. Sterling told Plaintiff she was "too sick to work because of her hip," and "too sick to do her job . . . she might fall." (Pl.'s Br., PFs. 7, 9, Dkt. No.126, p. 9). Further, Cink's termination took place a mere few months after Cink's return after hip surgery. This evidence presented by Cink satisfies her burden of establishing a prima facie case of disability discrimination under the ADA.

C. McDonnell Douglas Burden Shifting Analysis

Because Plaintiff has established a prima facie case of discrimination under both the ADA and ADEA, the burden shifts to Grant County to provide a legitimate, non-discriminatory reason for terminating Cink.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  Defendant argues that Cink was terminated due to her many on the job mistakes, including: repeatedly giving wrong numbers to Sheriff Sterling; paging an ambulance to the wrong location; disobeying Sterling's orders by giving the phone to a deputy during an emergency call; sending out incorrect pages to emergency personnel; and setting off tornado sirens.  (Def's. Rep. Br., Dkt. No. 185, p. 14).  Defendant has provided ample legitimate, non-discriminatory reasons for Cink's termination.  This evidence is sufficient to shift the burden back to Cink to show that the Defendant's proffered legitimate, nondiscriminatory reasons for terminating Cink are pretext for unlawful discrimination. Id. at 804.

At the final stage of the McDonnell Douglas test, Plaintiff has the burden to "'prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination.'"  Richardson v. Gallagher, 553 F. App'x 816, 823 (10th Cir. 2014) (quoting Jaramillo v. Colo. Judicial Dep't, 427 F.3d 1303, 1307 (10th Cir. 2005) (en banc) (per curiam)).  "Where an employer advances a number of reasons for an adverse employment action"—as in this case, where Defendant points to Cink's several safety mistakes made while in her role — the Tenth Circuit "ha[s] adopted a 'general rule' that 'an employee must proffer evidence [showing] each of the employer's justifications is pretextual.'"  Id. at 824 (quoting Lobato v. N.M. Env't Dep't, 733 F.3d 1283, 1289 (10th Cir. 2013)).  To survive

summary judgment and create a genuine issue of material fact with respect to pretext, Plaintiff must offer "evidence showing weakness, implausibility, inconsistency, incoherency, or contradiction in [Defendant's] stated reasons, such that a reasonable jury could find them unconvincing." Daniels v. United Parcel Service, Inc., 701 F.3d 620, 639 (10th Cir. 2012). In other words, Cink must provide evidence that Grant County's proffered reasons are unworthy of belief. Trujillo v. PacifiCorp, 524 F.3d 1149, 1158 (10th Cir. 2008). No one type of evidence is required to discredit the employer's proffered legitimate reason and establish a discriminatory inference. Id. Plaintiff can demonstrate pretext "in a variety of ways, including but not limited to differential treatment of similarly situated employees and procedural irregularities," id., or "'the use of subjective criteria.'" Jaramillo, 427 F.3d at 1308 (quoting Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1217 (10th Cir. 2002)).

First, Cink contends Defendant's purported justification is pretextual because Sterling treated Cink differently than similarly-situated employees. See Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1168 (10th Cir. 2007) (quoting Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1230 (10th Cir. 2000) (noting that one "common method [of showing pretext] is a differential treatment argument, in which the plaintiff demonstrates that the employer 'treated [the plaintiff] differently from other similarly-situated employees who violated work rules of comparable seriousness' in order to show that the employer failed to follow typical company practice in its treatment of the plaintiff."). To show this, Plaintiff presents evidence of Sterling treating younger, non-disabled employees more favorably than Cink. Plaintiff argues that Angela Wilson, who is twenty-seven years old and has no

disabilities, twice failed to send an officer on a call and twice failed to record the information, violating at least six written policies. (Pl.'s Br., PF. 20, Dkt. No.126, p. 11). Further, Cink provides deposition testimony of Sterling admitting that Wilson was given more time to improve than Plaintiff. Wilson allegedly allowed male and female inmates to co-mingle, a violation of policy and Oklahoma law, failed to fingerprint an arrestee contrary to prior instruction, and made an obscene gesture to a co-worker. (Pl.'s Br., PF. 20, Dkt. No.126, p. 11). When asked whether "Ms. Wilson was given more opportunities through letters of reprimand and suspension to improve than Ms. Cink who received no letters of reprimand and no suspensions," Sterling answered "Yes." (Pl.'s Br., PF. 20, Dkt. No.126, p. 11).

Second, Cink presents evidence of biased remarks, made by Sterling two to three times per week over a four month period, regarding Cink's age and disability. As to Cink's disability, Cink provides evidence that Sterling told Plaintiff she was "too sick to work because of her hip," and "too sick to do her job . . . she might fall." (Pl.'s Br., PFs. 7, 9, Dkt. No.126, p. 9). As to Cink's age, Sterling told her "that she needed to retire because of her age." Id. Plaintiff also contends that Sterling told Cink that she would be fired if she didn't retire, and that he was "watching [her]." (Pl.'s Br., PF.,9, Dkt. No.126, p. 9). Viewing the evidence in the light most favorable to Cink, the Court finds that a reasonable jury could conclude that Grant County's reasons for terminating Cink are unworthy of belief. Plaintiff has presented enough evidence of inconsistency to create a genuine issue of material fact of pretext and survives summary judgment on her claims of age and disability discrimination.

11

In addition, citing Gross v. FBL Fin. Servs., Inc., Defendant argues that Cink must prove that her employer would not have taken the challenged action "but for the plaintiff's age." 557 U.S. 167, 177 (2009). Although Cink ultimately "retains the burden of persuasion to establish that age was the 'but-for' cause of [ ] [Grant County's] adverse action" and must prove so "by a preponderance of the evidence," Plaintiff does not have to satisfy that burden at the dismissal stage. Gross, 557 U.S. at 177. Even if Plaintiff were required to prove "but for" causation, Cink need not show that age was the sole cause of her termination but that "age was the factor that made the difference." Jones v. Oklahoma City Public Schools, 617 F.3d 1273, 1277-78 (10th Cir. 2010). Cink has satisfied this burden.

D.  Retaliation

Cink also brings retaliation charges against Grant County. To establish a retaliation claim, Cink must show "(1) she availed herself of a protected right under the ADEA; (2) she was adversely affected by an employment decision; and (3) there is a causal connection between the two actions." MacKenzie, 414 F.3d at 1278-79. Cink "availed herself of a protected activity" when she complained and asked Sterling to stop making the ageist remarks, and was "adversely affected by an employment decision" when she was terminated from employment. Defendant contends, however, that a causal connection does not exist between the two events. To demonstrate the requisite causal connection, Plaintiff must produce "'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action,'" or temporal proximity. Conroy v. Vilsack, 707 F.3d 1163, 1181 (10th Cir. 2013) (citations omitted). Although there is no

"precise temporal line for purposes of determining whether the requisite proximity is present to establish—at the prima facie stage—the causation element . . . [i]t appears clear that, if the adverse action occurs in a brief period up to one and a half months after the protected activity, temporal proximity alone will be sufficient to establish the requisite causal inference." Id.

Because Cink has provided evidence showing that Cink was terminated within weeks after her protected activity (i.e. asking Sterling to stop the ageist remarks), Cink has established a sufficient casual connection at the prima facie stage[2]. As Defendant's and Plaintiff's arguments about pretext are the same as for Plaintiff's discrimination claims, the Court does not need to re-hash its previous discussion. Summary judgment for Defendant's retaliation claim is inappropriate, given the evidence Plaintiff has presented and the requirement that the Court view all the evidence and resulting inferences in Cink's favor.

E.  Hostile Work Environment

Cink next alleges that she was subjected to a hostile work environment. "For a hostile environment claim to survive a summary judgment motion, a plaintiff must show that a rational jury could find that the workplace [was] permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." MacKenzie, 414 F.3d at

---

[2]  Cink alleges that Sterling's comments were made two to three times a week up until her termination in June and that after each comment, she asked him to stop making the remarks. (Pl.'s Br., PF. 9, Dkt. No.126, p. 9). The Court can infer that there were no more than a couple of weeks between Cink's last request to Sterling to stop the comments and her termination.

1280 (citing Penry v. Fed. Home Loan of Topeka, 155 F.3d 1257, 1261 (10th Cir.1998) (quotation omitted). In determining whether a working environment is hostile, courts look to several factors, including: "(1) the frequency of the discriminatory conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's work performance." Id. Cink provides evidence that Sterling made comments to her regarding her age and her health condition two to three times per week over a period of four months. Cink argues that the hostile work environment led to chest pains and further medical issues. The Court finds that a reasonable person, in similar circumstances as Cink, could conclude that the statements made by Sterling constitutes an abusive working environment. Her allegations of the frequency of these statements, her repeated requests for Sterling to stop, the resulting adverse effects on her health, and their demeaning nature are sufficient to create a question of fact as to the level of pervasiveness required in a hostile working environment claim. Summary judgment is not appropriate on this claim.

F. State Claims

For the reasons mentioned above, Plaintiff's state claims under the Oklahoma Anti-Discrimination Act survive summary judgment.

IV.  CONCLUSION

Accordingly, the Court hereby GRANTS IN PART and DENIES IN PART the Amended Motion for Summary Judgment of Defendant Board of County Commissioners of

Grant County (Dkt. No. 180). Plaintiff's claims of wrongful termination under <u>Burk,</u> and

ADA failure to accommodate are dismissed. All other claims remain.

IT IS SO ORDERED this 28th day of April, 2016.


ROBIN J. CAUTHRON
United States District Judge